FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 29, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHIRLEY C.,<br><br>                         Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                       Defendant. | NO: 2:18-CV-42-FVS<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 12, 13. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney Cory J. Brandt. Defendant is represented by Special Assistant United States Attorney Jeffrey E. Staples. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 12, is denied and Defendant's Motion, ECF No. 13, is granted.

/ / /

1

**JURISDICTION**

2     Plaintiff Shirley C.[1] (Plaintiff), filed for disability insurance benefits (DIB)

3 and supplemental security income on June 8, 2015, alleging an onset date of January

4 1, 2015.  Tr. 289-91, 317.  Benefits were denied initially, Tr. 163-66, 171-74, and

5 upon reconsideration, Tr. 182-98.  Plaintiff appeared at a hearing before an

6 administrative law judge (ALJ) on October 26, 2016.  Tr. 45-115.  On December 21,

7 2016, the ALJ issued an unfavorable decision, Tr. 20-37, and on December 6, 2017,

8 the Appeals Council denied review.  Tr. 1-5.  The matter is now before this Court

9 pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

10     **BACKGROUND**

11     The facts of the case are set forth in the administrative hearing and transcripts,

12 the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are

13 therefore only summarized here.

14     Plaintiff was born in 1975 and was 41 years old at the time of the hearing.  Tr.

15 289.  She graduated from high school.  Tr. 405.  She has work experience as a bank

16 teller, retail cashier and cashier trainer, retail customer service provider, insurance

17 clerk, car rental clerk and detailer, and personal care attendant, Tr. 97-103.

18

19
20
21
[1]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

Plaintiff testified that she has paroxysmal orthostatic tachycardia syndrome (POTS) which causes her blood pressure to drop. Tr. 70. She gets nauseous, light-headed, and hot, and alleges that she must use a wheelchair and cane because of it. Tr. 70. She also has fibromyalgia. Tr. 71. She testified that POTS and fibromyalgia cause her to be tired and exhausted. Tr. 71. She requires frequent breaks and experiences memory loss. Tr. 71. She has bad days and better days. Tr. 78. On bad days she has pain from head to toe, dizziness, nausea, and headaches. Tr. 84. Due to her symptoms, she spends two to three days per week in bed. Tr. 85. She has headaches 20 days a month, and 15 of those are severe headaches. Tr. 86.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe

than one of the enumerated impairments, the Commissioner must find the claimant

disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess the

claimant's "residual functional capacity." Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the

analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in the

past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the

claimant is capable of performing past relevant work, the Commissioner must find

that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the

claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the

claimant's RFC, the claimant is capable of performing other work in the national

economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this

determination, the Commissioner must also consider vocational factors such as the

claimant's age, education and past work experience. 20 C.F.R. §§

404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other

work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since January 1, 2015, the alleged onset date. Tr. 22. At step two, the ALJ found that Plaintiff has the following severe impairments: fibromyalgia, obesity, migraines, depressive disorder, and anxiety disorder. Tr. 22. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 24.

The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> she can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; she can never climb ladders, ropes, or scaffolds; she should avoid all exposure to vibration and hazards, such as unprotected heights and moving mechanical parts; she can tolerate

exposure to no more than moderate noise; she is limited to simple, routine, and repetitive tasks with a reasoning level of 2 or less; and she would likely be absent from work 8 to 10 days per year.

Tr. 28.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 35.  After considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform such as electronics worker, mail clerk, and housekeeping cleaner.  Tr. 36.  Therefore, at step five, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2015, through the date of the decision.  Tr. 37.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act.  ECF No. 12.  Plaintiff raises the following issues for review:

1.      Whether the ALJ properly evaluated Plaintiff's symptom complaints;

2.      Whether the ALJ properly considered the medical opinion evidence; and

3.      Whether the step five finding is legally sufficient.

ECF No. 12 at 10.

**A.    Symptom Claims**

Plaintiff contends the ALJ improperly rejected her symptom claims.  ECF No. 12 at 17-18.  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to

permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds that the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not credible. Tr. 29.

First, the ALJ found the objective medical evidence does not fully support the level of limitation claimed. Tr. 29, 33. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling

effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (2011). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ discussed the objective medical evidence in detail. Tr. 29-35. In addition to discussing office visit notes and other evidence in the medical record, the ALJ noted the opinion of Steven Goldstein, M.D., the medical expert at the hearing, whose opinion regarding Plaintiff's physical limitations was given great weight by the ALJ and is consistent with the RFC finding. Tr. 32-33, 52-65. Additionally, the ALJ noted the opinions of Thomas Genthe, Ph.D., an examining psychologist, and Nancy Winfrey, Ph.D., the psychological expert at the hearing. Tr. 33-35, 65-67, 406-07. The opinions of Dr. Genthe and Dr. Winfrey were given great weight by the ALJ, Tr. 34-35, and their opinions regarding Plaintiff's mental limitations are consistent with the RFC finding. The ALJ's detailed discussion of the record reasonably supports the ALJ's conclusion that the objective evidence is inconsistent with the level of limitation alleged.

Without citing any authority, Plaintiff asserts that the ALJ's finding "is not valid because the hallmark of the examination of a fibromyalgia patient is the lack of objective findings in relation to the plethora of symptoms, except for painful tender points, and perhaps, signs of deconditioning – both of which were documented." ECF No. 12 at 18 (citing Tr. 418, 551, 942). There is no question

that fibromyalgia is documented in the record – the ALJ found it is a severe impairment at step two and included limitations attributable to fibromyalgia in the RFC finding. Tr. 22, 28. Contrary to Plaintiff's assertion, the ALJ reasonably considered the objective evidence in evaluating the intensity, persistence and limiting effects of Plaintiff's fibromyalgia. In fact, Social Security Ruling 12-2p, which addresses the evaluation of fibromyalgia in disability claims, provides, "[i]f objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record."[2] Plaintiff does not identify any error in the ALJ's consideration of the objective evidence, and the Court concludes the ALJ interpretation of the evidence was reasonable.

Second, the ALJ noted contradictions and inconsistencies in the record which undermine Plaintiff's allegations. Tr. 30-33. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability review process with any other existing statements or conduct made under other circumstances. *Smolen v. Chater*, 80 F.3d

---

[2] Social Security Ruling 12-2p references S.S.R. 96-7p regarding the evaluation of symptom claims. As of March 28, 2016, S.S.R. 96-7p was superseded by S.S.R. 16-3p. Notwithstanding, the consideration of objective evidence applies in evaluating a claimant's symptom complaints under S.S.R. 16-3p, as well.

1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."); *Thomas*, 278 F.3d at 958-59. The ALJ observed that Plaintiff missed greater than half of her physical therapy appointments. Tr. 549. She told her physical therapist that she wanted to be discharged from therapy because life stressors prevented her from fully committing to therapy, Tr. 549, but the ALJ noted she inconsistently testified that she missed physical therapy because of migraines and fibromyalgia symptoms, suggesting a greater level of limitation than supported by the record. Tr. 30, 91.

A second inconsistency identified by the ALJ is that although Plaintiff requested and received a prescription for a quad cane, the record does not reflect she was ever observed using the cane. Tr. 33. Similarly, she presented at the hearing in a wheelchair, but the ALJ observed there is no prescription for a wheelchair or mention of her use of a wheelchair in the record. Tr. 32-33. Plaintiff did not report the use of assistive devices in her Function Reports. Tr. 32, 315, 356.

Another inconsistency identified by the ALJ is that Plaintiff initially testified that her husband did the household shopping, but later testified that her husband is functionally blind and also applied for disability, and that she actually goes shopping once a month. Tr. 33, 73-76. Plaintiff's husband reported that Plaintiff takes care of him because, "I currently cannot read, wright [sic] cook, clean, drive," and that

Plaintiff shops for groceries once a week. Tr. 33, 331, 333-34. These inconsistencies were reasonably considered by the ALJ and this is a clear and convincing reason for giving less weight to Plaintiff's symptom allegations.

Third, the ALJ found Plaintiff's alleged limitations are at times contradicted by her own reports of activity. Tr. 33. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in assessing a claimant's symptom complaints. *See Rollins*, 261 F.3d at 857. However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant can spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair,* 885 F.2d at 603. Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The ALJ noted that Plaintiff testified that she could do housework for 45 to 60 minutes on a good day and that she stays in bed often because of body pain and headaches. Tr. 29, 82, 85-86. The ALJ also noted Plaintiff reported her condition affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, see, remember, complete tasks, concentrate, and understand. Tr. 29, 314.

However, the ALJ found no restriction in Plaintiff's activities of daily living since she reported helping her disabled husband, crocheting, caring for dogs, preparing simple meals, doing laundry, and shopping for groceries. Tr. 26, 310-12. She reported to Dr. Genthe that she plays with her rabbits, crochets, and reads, and is able to care for her own hygiene, prepare her own meals, shop for groceries, wash dishes, do laundry, vacuum, and dust independently and in a reasonable amount of time. Tr. 26, 405. The ALJ observed that in June 2015, Plaintiff reported dizziness and faintness while cleaning the house and "repeatedly bending and standing, picking things up off the [floor]." Tr. 32, 590. Her symptoms resolved quickly, and the examining physician suggested that she may have experienced hypoglycemia since the symptoms occurred several hours after eating a high carbohydrate meal. Tr. 591-92. The ALJ concluded that the level of activity described was inconsistent with Plaintiff's allegations. Tr. 32. The ALJ also noted that Plaintiff's ability to care for her disabled husband contradicts her own alleged limitations. Tr. 33, 310, 331.

Plaintiff argues the ALJ's finding regarding daily activities is "not valid because the activities cited by the ALJ do not show [Plaintiff] was able to perform full time work." ECF No. 12 at 18. Plaintiff cites activities of shopping once a month, crocheting, and occasional household chores as activities that do not demonstrate the ability to perform full-time work. ECF No. 12 at 18. However, even if a claimant's daily activities do not demonstrate a claimant can work, they

may undermine the claimant's complaints if they suggest the severity of the claimant's limitations were exaggerated. *See Molina*, 674 F.3d at 1113; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). Plaintiff fails to address the inconsistencies between Plaintiff's activities and her allegations that were noted by the ALJ. This is a clear and convincing reason supported by substantial evidence for giving less weight to Plaintiff's symptom claims.

**B.    Medical Opinion Evidence**

Plaintiff contends the ALJ failed to properly consider the opinions of treating nurse practitioner Mariann Williams. ECF No. 12 at 12-16.

The opinion of an acceptable medical source, such as a physician or psychologist, is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927 (2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Pursuant to *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

Ms. Williams opined regarding Plaintiff's functioning in January, April, and October of 2016. Tr. 525-27, 885-86, 919. In January 2016, Ms. Williams completed a Mental Medical Source Statement form and opined that Plaintiff is severely limited, defined as the "inability to perform," in six functional areas: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and workweek and perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to set realistic goals or make plans independently of others. Tr. 525-27. She also opined that Plaintiff is markedly limited in eight functional areas. Tr. 525-27. Ms. Williams indicated that Plaintiff would miss four or days of work per month. Tr. 528.

In April 2015, Ms. Williams completed a DSHS Physical Evaluation form and indicated that fibromyalgia causes a marked, or "very significant," interference in her ability to perform work-related activities. Tr. 885. She opined that Plaintiff is severely limited and unable to work. Tr. 886.

In October 2016, Ms. Williams wrote a letter describing Plaintiff's condition. Tr. 919. Ms. Williams indicated that in the year to year-and-a-half prior, Plaintiff's health had declined due to fibromyalgia, migraine headaches, and a syndrome similar to paroxysmal orthostatic tachycardia syndrome which causes significant

fluctuations in Plaintiff's blood pressure and ability to cognate. Tr. 919. Ms. Williams noted that Plaintiff "spent the better part of last January through March in bed and was unable to do much of anything." Tr. 919. Ms. Williams opined that Plaintiff is "no longer able to be gainfully employed," although she could work up to two hours per day averaged over a week. Tr. 919.

The ALJ gave little weight to Ms. Williams' opinions. Tr. 26, 31-32, 34. As a nurse practitioner, Ms. Williams is an "other source" under the regulations. 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013). Thus, the ALJ was required to give germane reasons for rejecting her opinions. *See Dodrill*, 12 F.3d at 919.

Plaintiff contends the ALJ rejected Ms. Williams' opinions for three reasons. ECF No. 12 at 12. In fact, the ALJ addressed the opinions individually and gave reasons for rejecting each of them. Tr. 26, 21-32, 34. Thus, the Court addresses the ALJ's reasons for rejecting each opinion in turn.

First, regarding Ms. Williams' January 2016 opinion regarding Plaintiff's mental limitations, the ALJ noted that Ms. Williams is not an acceptable medical source and is not a mental health specialist. Tr. 26. As noted *supra*, the opinion of an acceptable medical source, such as a physician or psychologist, is properly given more weight than that of an "other source" like a nurse practitioner. 20 C.F.R. §§ 404.1527, 416.927 (2012). Further, the opinion of a specialist in the relevant field is entitled to greater weight than that of a nonspecialist. *Molina*, 674 F.3d at 1112 (citing *Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir. 2001) ("[T]he

regulations give more weight to . . . the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."); *Smolen,* 80 F.3d at 1285 (holding that the ALJ should have given greater weight to a physician with the expertise that was most relevant to the patient's allegedly disabling condition)).

The ALJ found that Ms. Williams' January 2016 opinion "directly contradicts the opinions of two acceptable medical sources, Dr. Genthe and the psychological expert at the hearing [Dr. Winfrey]." Tr. 34. Dr. Genthe diagnosed only mild depressive and anxiety disorder and assessed mild or no limitations, and Dr. Winfrey diagnosed unspecified depressive and anxiety disorders and assessed limitations of simple instructions and simple, routine, repetitive work. Tr. 26, 34, 66-67, 406-07. Both opinions by these specialists were given great weight by the ALJ, Tr. 34-35, and clearly contradict Ms. Williams' opinion that Plaintiff has marked and severe limitations in numerous functional areas. This is a germane reason for rejecting the opinion.[3]

---

[3] Plaintiff's argument that Ms. Williams' opinions are entitled to controlling weight because she is a treating source misunderstands the applicability of S.S.R. 96-2p (rescinded effective March 27, 2017) and the weight applicable to non-acceptable medical source opinions at the time of the ALJ's decision. ECF No. 12 at 13-14. As the Ruling states, an opinion must, among other requirements, be "not inconsistent" with other substantial evidence in the record. S.S.R. 96-2p at *2.

Second, the ALJ gave little weight to Ms. Williams' April 22, 2016 opinion. Tr. 31. The ALJ found Ms. Williams' opinion conflicted with the findings of Dr. Flavin, the treating physician in Ms. Williams' office. Tr. 31. One week before Ms. Williams opined that fibromyalgia is severely limited and unable to work, Plaintiff reported to Dr. Flavin that a change in her anti-depressant had helped her fibromyalgia symptoms. Tr. 31, 717. Dr. Flavin stated that, "[o]verall symptoms seem to be quite stable on Cymbalta and Gabapentin." Tr. 718. The ALJ also noted that on May 1, 2016, just over a week after Ms. Williams' April 22 opinion, Ms. Williams indicated Plaintiff had no problems with memory and she was able to sit in a chair and crochet. Tr. 732. Additionally, the ALJ noted that while Ms. Williams is a treating provider, she is not an acceptable medical source, and that the findings of Dr. Flavin, who is an acceptable medical source, "are never as extreme as Ms. Williams'" throughout the record. Tr. 31. These reasons are germane and supported by substantial evidence.

Plaintiff notes that Dr. Flavin's statement that Plaintiff's symptoms were "stable" does not mean that her symptoms were resolved. ECF No. 12 at 13. The ALJ did not assert that Dr. Flavin opined that Plaintiff had zero symptoms, only that

_____

The ALJ adequately demonstrated Ms. Williams' opinions are inconsistent with other evidence in the record, including the opinions of Dr. Winfrey and Dr. Genthe.

Dr. Flavin characterized her symptoms more mildly than Ms. Williams. Indeed, on April 15, 2015, Plaintiff reported to Dr. Flavin that she was feeling better after a medication adjustment, despite ongoing pain and fatigue. Tr. 717. She thought medication was "definitely helping and she likes being on it and she feels like this is working well." Tr. 717. On exam, Dr. Flavin found Plaintiff in no acute distress with no evidence of active synovitis, no focal deficits, and no skin rashes. Tr. 718. Dr. Flavin recommended additional medication adjustments and to follow up in six months or sooner with any new or concerning symptoms. Tr. 718.

Based on the foregoing, it was reasonable for the ALJ to conclude that Dr. Flavin's office visit notes do not reflect disabling symptoms or limitations, which contrasts with Ms. Williams' opinion one week later that Plaintiff is severely limited and unable to work. It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Thus, the ALJ reasonably found that Dr. Flavin's notes and Plaintiff's self-report on April 15 conflict with Ms. Williams' April 22 opinion that Plaintiff is disabled.

Third, the ALJ gave little weight to Ms. Williams' October 2016 opinion letter. Tr. 32. The ALJ noted Ms. Williams' statement of unemployability is an opinion on an issue reserved to the Commissioner. The ALJ is responsible for

determining whether a claimant meets the statutory definition of disability, not a medical provider. Social Security Ruling 96-5p. A medical source that a claimant is "disabled" or "unable to work" does not require the ALJ to determine the claimant meets the definition of disability. 20 CFR §§ 404.1527(d)(1); 416.927(d)(1) (2012). This is a germane reason for rejecting the opinion letter.

Additionally, the ALJ found the assessment of Plaintiff's functional capacity is inconsistent with the longitudinal record. Tr. 32. Inconsistency with medical evidence is a germane reason for rejecting lay witness evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). The ALJ observed that Ms. Williams is not an acceptable medical source, that none of the physicians in Ms. Williams' office opined that Plaintiff is unable to work, and in fact no acceptable medical source in the record stated Plaintiff could not work. Tr. 32. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). These reasons are all germane reasons for giving little weight to Ms. Williams' opinions.

**C.    Step Five**

Plaintiff argues the ALJ erred at step five because the vocational expert's opinion that jobs exist in significant numbers in the national economy that a person with Plaintiff's RFC can do was based on an incomplete hypothetical. ECF No. 12 at 19-20. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's

limitations. *Osenbrook v. Apfel*, 240 F.3D 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. The ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Osenbrook*, 240 F.3d at 1164; *Magallanes*, 881 F.2d at 756-57; *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence. *Magallanes*, 881 F.2d at 756-57.

Plaintiff contends the ALJ's hypothetical to the vocational expert "failed to account for the limitations set forth by Nurse Williams." ECF No. 12 at 19. As discussed *supra*, the ALJ's reasons for rejecting the three opinions of Ms. Williams are germane and supported by substantial evidence. The ALJ therefore properly excluded those findings from the RFC and hypothetical to the vocational expert. The hypothetical contained the limitations the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony the VE gave in response to the hypothetical was therefore proper. *See id.*; *Bayliss*, 427 F. 3d at 1217-18.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~23

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** January 29, 2019.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge